## APPEAL OF ROCKFORD BRICK & TILE CO.

Docket No. 3873.   Decided July 22, 1926.

In 1915 the taxpayer charged to surplus certain improvement accounts shown by its books. *Held,* upon the evidence, that the taxpayer is entitled to include in invested capital the depreciated cost of the improvements charged to surplus in 1915.

*C. B. Stiver, Esq.,* for the petitioner.
*George G. Witter, Esq.,* for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the fiscal year ended January 31, 1920.

The taxpayer alleges a number of errors in the computation of the deficiency, but at the hearing all allegations of error were abandoned except such as relate to an inclusion in invested capital of $34,099.77, which amount represents a reinstatement in surplus account of certain improvement accounts charged off its books in 1915.

### FINDINGS OF FACT.

The taxpayer is an Iowa corporation with its principal office and factory at Rockford. It was incorporated in 1910 and is engaged in the manufacture of brick and tile and other clay products. It now has 16 kilns. It started operations in 1910 or 1911, after the completion of 3 kilns. At that time it had a main building, which consisted of one engine-room large enough for a 300-horsepower engine, and next to that a boiler-room containing two 150-horsepower boilers. There was also a main machinery building, one story in height, approximately 300 feet long, 150 feet wide, and 40 feet high. By this main machine room was a drier containing 8 tunnels, with two tracks each, making a 16 track drier. The main machine room housed the plant, the puddle mill, the rollers, the feeders, and all such devices. The actual construction cost of buildings, tunnels, etc., prior to the time of starting operations was between $31,000 and $32,000.

Immediately after starting operations, the taxpayer began to enlarge its plant. It added additional kilns from year to year and

also additional tunnels. These kilns are what are commonly termed "round down draft kilns," the majority of them being 26 feet in diameter, measuring from the inside walls. A few are 30 feet in diameter. The walls are from 4 to 5 feet thick. The cost of constructing such a kiln during the period from 1910 to 1913 was approximately $3,500 to $4,000. In 1913 the taxpayer had 12 or 13 kilns in operation. The cost of constructing the first three kilns, buildings, tunnels, etc., prior to the date of starting operations was capitalized. For the next two or three years the charge for constructing kilns was carried as an operating expense and at the close of each year a determination was made of the cost of improvements and the amount thereof segregated from the operating expenses and carried on the taxpayer's books .of account as " development account " and " turnover."

In 1913 the taxpayer employed a new manager, who from that time has had full direction of the operations of the company and of the bookkeeping. The cost of new construction since 1913 has been properly capitalized. In 1915 a certified public accountant, who was making an audit of the taxpayer's books of account, suggested that, since the taxpayer had a large surplus, it would be only good accounting to charge off the balance in the development account, $16,360.32, and the balance in the turnover account, $17,739.45, to surplus. Inasmuch as the taxpayer was not contemplating the sale of any capital stock or the flotation of any bonds, the manager told him to make entries accordingly. Surplus was then reduced in the aggregate amount of $34,099.77.

In its income-tax return for the fiscal year ended January 31, 1920, the taxpayer claimed an invested capital of $192,308.82. The Commissioner determined the invested capital to be $119,646.18. In making such determination he excluded from invested capital a so-called development fund shown on the taxpayer's return in the amount of $34,099.77.

OPINION.

SMITH: The taxpayer claims the right to increase its invested capital for the fiscal year ended January 31, 1920, in the amount of $34,099.77, that amount representing a reduction made in the surplus of the company in 1915 as a result of charging off certain balances in a " development " account and a " turnover " account.

We are satisfied from the evidence that the amount charged off to the surplus account in 1915 should be restored as of that date. It appears, however, that the improvements acquired by the expenditure of $34,099.77 were subject to depreciation, which depreciation would not be taken into account in the computation of invested capital for the taxable year if the entire amount of $34,099.77 were

added to the invested capital determined for the fiscal year. The depreciated cost of the improvements represented by the $34,099.77 in question should be added to the invested capital for the taxable year under review in the redetermination of the correct amount of the deficiency. *Appeal of Goodell-Pratt Co.*, 3 B. T. A. 30.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*